THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT
BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING
EXCEPT AS PROVIDED BY RULE 239(d)(2), 
 SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
James Bruce Saxon, Jr.,       
Appellant,
 
 
 

v.

 
 
 
Curtis Stokes, M.D.,       
Respondent.
 
 
 

Appeal From Colleton County
John M. Milling, Circuit Court Judge

Unpublished Opinion No. 2005-UP-132
Submitted February 1, 2005  Filed February 
 22, 2005   

AFFIRMED

 
 
 
James H. Moss, of Beaufort, for 
 Appellant.
Stephen L. Brown, John Hamilton 
 Smith, and Matthew K. Mahoney, all of Charleston, for Respondent.
 
 
 

PER CURIAM: In this medical malpractice 
 action, we must decide whether the trial court erred in seating two jurors, 
 one of whom identified herself as a current patient of the Respondent physician 
 and the other who identified himself as a former patient of another physician 
 in the Respondents medical practice.  Over Appellants objection, the trial 
 judge impaneled these jurors.  We find no abuse of discretion and affirm the 
 trial judges ruling.
FACTS/PROCEDURAL HISTORY
Appellant James Bruce Saxon, Jr., brought 
 this medical malpractice action against Respondent Curtis Stokes, M.D.  At the 
 time this case was brought to trial, Dr. Stokes was one of six doctors practicing 
 general medicine at Walterboro Family Practice, P.A., in Colleton County.  Walterboro 
 Family Practice, however, was not a party to this action.  
During jury venire, the trial judge asked 
 the pool of potential jurors whether they had any connection with Dr. Stokes 
 or the other physicians or employees of Walterboro Family Practice.  Twenty-nine 
 jurors responded affirmatively.  When individually questioned by the trial judge, 
 some jurors indicated they were current or longstanding patients of Dr. Stokes 
 or the other physicians in his practice, while others responded they were treated 
 only once or twice by these doctorsin some cases, years ago.  
Saxon requested that all jurors who were 
 being treated by Dr. Stokes and his associates be stricken for cause, arguing 
 this doctor-patient relationship would unavoidably hinder these jurors ability 
 to view the case impartially. The trial judge disagreed, finding all but one 
 of the twenty-nine affected jurorsbased on their responsescould serve fairly 
 and impartially. 
As the jury was being drawn, Saxon used 
 all four of his peremptory strikes to excuse jurors who had identified themselves 
 as having a connection to Dr. Stokes or his medical practice associates.  However, 
 two of the affected jurors were drawn after all of the peremptory strikes had 
 been exhausted.  These two jurorsjuror number 125 and juror number 158were 
 both impaneled on the jury despite Saxons general objection that any juror 
 who had been treated by Dr. Stokes or his associates be struck from the jury. 

During the initial jury venire, both juror 125 
 and juror 158 were individually questioned by the trial judge.  Juror 125 identified 
 herself as a current patient of Dr. Stokes:

JUROR: My name is Robertson, 
 125.
THE COURT: Thank you.  Ms. Robertson, 
 whom is it that you recognize?
JUROR: Dr. Stokes and also Dr. 
 Hyatt.
THE COURT: And are they your 
 family physicians?
JUROR: Yes, sir.
THE COURT: And are you -- have 
 you seen them in the last six months?
JUROR: Yes, sir.
THE COURT: And as a result of 
 that type of relationship you have with those doctors, can you be fair and impartial 
 to both the Plaintiff and Defendant in connection with this case?
JUROR: Yes, I can.

Juror 158 identified himself as a former patient 
 of another physician practicing with Dr. Stokes:

THE COURT: Yes, sir?
JUROR: James Walker, Number 158.
THE COURT: Yes, sir, Mr. Walker. 
 Whom do you recognize?
JUROR: Dr. Johnson used to be 
 my doctor many years ago.
THE COURT: And as a result of 
 that type of relationship, can you be fair and impartial to the Plaintiff and 
 to the Defendant?
JUROR: Yes. 

Both of these jurors were impaneled on 
 the twelve-member jury that decided the casefinding in favor of Dr. Stokes.  
 This appeal followed.
STANDARD OF REVIEW
The decision to disqualify a potential juror for 
 bias is committed to the sound discretion of the trial judge and that decision 
 will not be overturned absent an abuse of discretion. Abofreka v. Alston 
 Tobacco Co., 288 S.C. 122, 125, 341 S.E.2d 622, 624 (1986); Palmetto 
 Bank v. Rowland, 275 S.C. 38, 40, 267 S.E.2d 426, 426 (1980). 
LAW/ANALYSIS
          Saxon claims the trial judge abused his 
 discretion in failing to disqualify juror 125 and juror 158 from serving on 
 the jury.  Saxon makes two legal arguments here: first, that this court should 
 adopt a per se rule that all ongoing patients of a physician involved 
 in a medical malpractice action be disqualified from serving on the jury, and, 
 alternatively, absent a per se rule, juror 125 and juror 158 should 
 nevertheless have been disqualified in this case.  Dr. Stokes, however, claims 
 that Saxon failed to preserve these issues for appeal.
I.  Preservation of Issues for Appeal
We first address the questions raised 
 concerning issue preservation.  
Respondent argues that Saxon failed to specifically 
 raise an objection to the qualification of jurors 125 and 158, thereby waiving 
 any right to appeal the trial judges decision to allow these jurors to serve. 
 [1]   We agree in part.
After carefully reviewing the transcript 
 of the jury selection process contained in the record before us, it is clear 
 that Saxons objection regarding juror disqualification focused primarily on 
 those jurors who had identified themselves as current patients of Dr. Stokes.  
 Saxon voiced much less concern about those jurors who had been treated many 
 years ago or were treated by the other physicians of Walterboro Family Practice. 
Arguably, therefore, Saxon abandoned his request 
 to disqualify all but the current, ongoing patients of Dr. Stokes.  However, 
 despite this almost exclusive focus on the current patients of Dr. Stokes in 
 argument to the trial judge, Saxons counsel did, by way of caveat, add: I 
 mean, we think that all former or current patients of the 
 firm should be stricken, but . . .  (emphasis added).  While a close 
 question is presented, we find this statement preserves Saxons general objection 
 to any of the twenty-nine affected jurors being allowed to serve on the jurywhether 
 they were current or former patients of the defendant or any other physician 
 in his practice.
Part of Saxons argument to this court, 
 however, is that the trial judge was unable to reach a fully informed decision 
 about the ability of jurors 125 and 158 to serve impartially because he failed 
 to reexamine those two jurors individually as he had done with other jurors 
 specifically identified by Saxon.  We find this particular argument is 
 not preserved.  
The judge requested from Saxon a list 
 of the jurors in question.  Saxon furnished the list, and the judge agreed to 
 reexamine those jurors on the list.  Jurors 125 and 158 were not included on 
 the list, and they were not reexamined.  Following the judges reexamination 
 of those jurors identified on Saxons list, and just prior to jury selection, 
 the judge asked, Anything else we need to do, as far as the plaintiff is concerned 
 prior to the preparation of the strike sheet?    Saxon, through counsel, responded, 
 No, sir, your honor.  We find Saxons current challenge to the trial judges 
 failure to reexamine jurors 125 and 158 is not preserved.  
II.  Qualification of Jurors 125 
 and 158
Turning to the merits of Saxons broader 
 appeal, and in the application of current law, we find no abuse of discretion 
 by the trial judges qualification of jurors 125 and 158.
The circumstances of this case mirror 
 those in the case of  Roof v. Kimbrough, 297 S.C. 156, 375 S.E.2d 318 
 (Ct. App. 1988).  In Roof, the appellants claimed the trial judge erred 
 in failing to strike for cause . . . any prospective juror who was being or 
 had been treated, or whose family members were treated by the respondent physicians 
 in a medical malpractice action.  During voir dire, several members of the venire 
 responded that they themselves or a close relative had been treated by the respondents.  
 The trial judge, however, individually questioned these jurors, and each responded 
 that his or her connection to the physicians being sued in that case would not 
 prejudice or prevent him or her from reaching a true and just verdict in the 
 case.  On appeal, this court found no abuse of discretion by the trial court 
 in impaneling those jurors. Id. at 158, 375 S.E.2d at 320.
We find the case at hand is squarely on point with 
 Roof.  As noted above, the trial judge included both jurors 125 and 158 
 individually in his initial questioning regarding the nature of their relationship 
 with Dr. Stokes and Walterboro Family Practice.  Both jurors responded unequivocally 
 that their respective connections to Dr. Stokes or his associates would not 
 prevent them from being fair and impartial.  Saxon cites no evidence indicating 
 these jurors were harboring any prejudice or otherwise being less than honest 
 in answering the trial courts questions.  
Additionally, we must reject at this level 
 Saxons suggestion that such prejudice should be presumed and that we adopt 
 a per se rule barring any patient of a defendant in a medical 
 malpractice case from serving on the jury. 
 [2]    Our supreme court has signaled no intention to divest the trial courts 
 of the discretion to address the qualification of a juror in a medical malpractice 
 case as the circumstances of the individual case and the ends of justice require.  
 We, as a mere error correction court, decline Saxons invitation to deviate 
 from precedent and adopt the suggested per se rule in medical 
 malpractice actions.  While we recognize the special relationship that exists 
 between patient and physician, policy matters such as this lie exclusively within 
 the supreme court.
CONCLUSION
Under existing law, we find no abuse of 
 discretion by the trial judge in denying Saxons request to disqualify jurors 
 125 and 158 from jury service in this case.  
 AFFIRMED.
 HEARN, C.J., KITTREDGE and WILLIAMS, 
 JJ., concur.        

 
      
 [1] See United Student Aid Funds, Inc. v. South Carolina Dept of 
 Health and Envtl Control, 356 S.C. 266, 273, 588 S.E.2d 599, 602 (2003) 
 (holding that an issue must have been raised to and ruled upon by the trial 
 court to be preserved for appellate review).  

 
      
 [2] Saxon argues the circumstances of the present case are analogous to those 
 of Alston v. Black River Electric Cooperative, 345 S.C. 323, 548 S.E.2d 
 858 (2001), in which our supreme court adopted a rule that cooperative members 
 should per se be disqualified to serve on a jury where the cooperative 
 was a party.  The ruling in Alston was rooted in the courts recognition 
 that cooperative members have an inherent pecuniary interest in the case 
 which would unavoidably hinder their ability to view the case impartially. 
 Id. at 331, 548 S.E.2d at 862.  Whether an Alston-type exception 
 should be recognized in a medical malpractice actionexcusing for cause those 
 potential jurors who are current or former patients of the defendant physicianis 
 beyond the purview of this error correction court.